UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jacqueline Deniese Mills,　　　　　　　　　　Civ. No. 21-1335 (SRN/BRT)

　　　　　　　Petitioner,

v.　　　　　　　　　　　　　　　　　　　　**REPORT AND**
　　　　　　　　　　　　　　　　　　　　　**RECOMMENDATION**
Warden M. Starr,

　　　　　　　Respondent.

---

Jacqueline Deniese Mills, *pro se* Petitioner.

Ana H. Voss, Esq., Kristen E. Rau, Esq., United States Attorney's Office, counsel for Respondent.

---

BECKY R. THORSON, United States Magistrate Judge.

　　　Petitioner Jacqueline Deniese Mills is an inmate currently serving a 150-month sentence for wire fraud, bribery, and money laundering. (Doc. No. 1, Pet.; Doc. No. 29, Declaration of Stacey Fleiner ("Fleiner Decl.") ¶ 3.) On June 3, 2021, while incarcerated at the Federal Correctional Institute-Waseca, Mills filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 asking the Court to order the Federal Bureau of Prisons ("BOP") to apply her First Step Act Earned Time Credits to her sentence and transfer her to home confinement under the CARES Act. (*See generally* Pet.) Respondent filed a response on February 23, 2022, arguing that the Court should (1) dismiss Mills's First Step Act claim because she failed to exhaust administrative remedies and because her claim is premature, and (2) dismiss Mills's CARES Act claim because the Court lacks

jurisdiction to review the BOP's home confinement decision and because Mills's Petition does not challenge the fact or duration of her custody.[1] (*See generally* Doc. No. 27.) For the reasons set forth below, this Court recommends that Mills's Petition be denied, Mills's pending motions to inform be denied as moot, and this matter be dismissed without prejudice.

## I. ANALYSIS

### A. The First Step Act claim

Congress enacted the First Step Act on December 21, 2018. The Act required the Attorney General to establish a "risk and needs assessment system" that, among other things, would offer "evidence-based recidivism reduction programs or productive activities" to prisoners. 18 U.S.C. § 3632(a). Eligible prisoners who successfully participate in this programming can earn certain rewards, including time credits to "be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(A), (C).

The BOP found Mills to be eligible to earn time credits under 18 U.S.C. § 3632(d). (Fleiner Decl. ¶ 21, Ex. E at 1.) Mills has been in continuous time credit earning status since December 18, 2018. (*Id.* ¶ 28.) According to the BOP, as of January 29, 2022, Mills

---

[1] As procedural background, Mills was given the option to submit an Amended Petition when she was originally appointed counsel on July 29, 2021. (*See* Doc. No. 7.) Since then, the Court has granted several extensions to file her Amended Petition, including granting additional time to file after the Court granted Mills's counsel's motion to withdraw. (Doc. Nos. 13, 15, 17, 19.) Mills, however, never submitted an Amended Petition. Thus, her original Petition filed on June 3, 2021, is this action's operative pleading. (*See* Doc. No. 21 at n.1.)

has earned 555 days of time credits with a projected release date of November 12, 2028, via a good conduct time release. (*Id.* ¶¶ 3, 28.) Mills will continue to earn time credits for the remainder of her term of imprisonment. (*Id.* ¶ 28.) Her time credits will not be reduced absent a disciplinary infraction. *See* 18 U.S.C. § 3632(e). As the BOP states, when Mills's total time credits equal the remainder of the time on her sentence, the BOP will determine if she still meets the criteria to have her time credits *applied* to her sentence for an earlier transfer to a prerelease residential reentry center or home confinement placement or an early release. *See* 18 U.S.C. § 3632(d)(4)(C); *see also* 18 U.S.C. § 3624(g).[2]

---

2      Under 18 U.S.C. § 3624(g), an inmate eligible to apply their time credits toward prerelease custody and supervised release is someone who:

> (A) has earned time credits under the risk and needs assessment system … in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>
> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
>
> (D) (i) in the case of a prisoner being placed in prerelease custody, the prisoner—
>
>> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
>>
>> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that—

Mills challenges the BOP's decision to not immediately apply her time credits to her sentence. She argues that the BOP's improper application impacts her request for home confinement under the CARES Act. (Pet. 4.) In response, Respondent argues that the Court should dismiss Mills's First Step Act time credit claim (1) because she failed to exhaust her administrative remedies, and (2) because her claim, under 18 U.S.C. § 3624(g), is premature.

### 1. Whether Mills has exhausted her administrative remedies

A federal prisoner seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2241, like Mills, must first exhaust the administrative remedies available to her. *See Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."). However, the prisoner may be excepted from procedurally defaulting on her administrative remedies if she "is able to show cause for h[er] default, and that actual prejudice will result if h[er] claims are procedurally barred."

---

    (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

    (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

    (cc) the prisoner is unlikely to recidivate; or

  (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1); 28 C.F.R. § 523.43(b)-(d).

*Donnelly v. Fed. Bureau of Prisons*, No. 10-CV-3105 (DWF/JSM), 2012 WL 2357511, at *4 (D. Minn. May 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 2357490 (D. Minn. June 20, 2012). "In order to satisfy the cause requirement to overcome a procedural default, a prisoner must show that some external impediment prevented him from exhausting his administrative remedies." *Id.* (quotations omitted). For instance, a prisoner may show cause if "proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose." *See Aguilar v. United States*, No. 15-CV-487 (SRN/JSM), 2015 WL 5719166, at *2 (D. Minn. Sept. 29, 2015) (citing *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004)). An administrative remedy process serves no useful purpose where the petitioner presents a pure question of law. *See, e.g.*, *Gurzi v. Marques*, No. 18-CV-3104 (NEB/KMM), 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019) (excusing the petitioner's failure to exhaust where the petitioner challenged the BOP's statutory interpretation), *report and recommendation adopted*, 2019 WL 6464838 (D. Minn. Dec. 2, 2019); *see also Elwood*, 386 F.3d at 844 n. 1 (exhaustion requirement waived based on government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile"); *Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016) ("[W]e have determined that exhaustion is not required with regard to claims which turn only on statutory construction. This is especially so where it is unlikely that the agency will change its position, or where the claims turn on broader questions of legal interpretation.") (citation omitted).

Here, Mills did not complete any of the procedural steps outlined in the BOP's administrative remedy procedure. *See* 28 C.F.R. §§ 542.10-542.19; (Doc. No. 28, Declaration of Shannon Boldt ("Boldt Decl.") ¶ 15, Ex. B.) Mills, however, contends her time credit claim is exempt from the administrative remedy process because it is a matter of statutory construction. (Pet. 4.) In response, Respondent argues that exhaustion should still be required because several issues must be resolved prior to the BOP applying time credits to Mills's sentence, including determining when Mills will have earned time credits that equal the remainder of her sentence, how many time credits she will have earned by that time, and her continued eligibility to apply the time credits she has earned.

This Court acknowledges that the requirement that an inmate exhaust their administrative remedies is an important one that serves valuable goals. Nonetheless, this Court "has the authority to proceed to the merits of the case rather than rely on a failure to exhaust when appropriate." *Gurzi*, 2019 WL 6481212, at *2. Here, it would be inappropriate to dismiss Mills's petition for failure to exhaust for two reasons.

First, several of the factual issues that the BOP complains must be resolved through the administrative process have already been resolved. For example, the BOP has already determined Mills is not eligible to apply time credits because she has not earned enough time credits to equal the remainder of her sentence. The BOP has also calculated that, as of January 29, 2022, Mills's time credits amount to 555 days. These facts among others give reason for this Court to address Mills's claim. Further factual development is not needed. *See id.* (declining to recommend dismissal for failure to exhaust because, in

6

part, "the development and crystallization of the factual record"—"one of the important functions served by exhaustion"—was not implicated).

Second, the heart of Mills's claim presents a question of law: whether her earned time credits under the First Step Act should be applied now or at the end of her sentence. Mills does not directly dispute in her Petition whether certain programs or activities should qualify for First Step Act credits, if she successfully completed certain programs, or if she has had any disciplinary infractions that would diminish her credits.[3] Instead, she simply disputes the BOP's "interpretation of the law" for how her time credits are calculated and how they should be properly applied. (Pet. 4.) This narrows the dispute to one of statutory construction. *See Gurzi*, 2019 WL 6481212, at *2 (excusing the petitioner's failure to exhaust administrative remedies where the petitioner challenged the BOP's interpretation of a statute); *see also Goodman v. Ortiz*, No. 20-CV-7582 (RMB), 2020 WL 5015613, at *3 (D.N.J. Aug. 25, 2020) (exempting the petitioner's failure to

---

[3] The BOP argues that Mills does in fact dispute whether certain programs qualify for First Step Act time credits, specifically that she is entitled to additional credits from programs she completed starting in August 27, 2018. (*See* Pet. 3.) However, to the extent Mills makes this argument in her Petition, the law is clear that inmates who completed programs prior to the First Step Act's enactment on December 21, 2018, are not entitled to time credits under the First Step Act for those programs. *See* 18 U.S.C. § 3632(d)(4)(B) ("A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed--prior to the date of enactment of this subchapter."); *see also Salter v. Fikes*, No. 20-CV-2253 (ECT/ECW), 2021 WL 2365041, at *5 (D. Minn. May 5, 2021) ("In sum, what the FSA precludes is prisoners earning time credit for programs completed before December 21, 2018."), *report and recommendation adopted*, 2021 WL 2354934 (D. Minn. June 9, 2021). Accordingly, to the extent Mills argues that she is entitled to additional credits from programs she completed prior to December 21, 2018, she is mistaken.

7

exhaust administrative remedies where the case presented "a narrow dispute of statutory construction which is exempt from the exhaustion requirement").

Here, because the essential facts have already been developed and Mills presents a question of law, this Court can make its decision on the record before it without need for further development. *See Gurzi*, 2019 WL 6481212, at *2; *see also Salter*, 2021 WL 2365041, at *6 (concluding exhaustion should *not* be excused where the petitioner presented several factual disputes that needed to be resolved). Thus, Mills's failure to exhaust is excused and this Court may continue onto the merits of Mills's claim.

### 2. Whether Mills is eligible to have her First Step Act time credits applied

Mills contends that her time credits earned under the First Step Act should be applied immediately to reduce her sentence and that the delay of awarding these credits directly affects the duration of her confinement. (Pet. 3.) Some background on the First Step Act is helpful here. Under the First Step Act, an inmate is only eligible to have their time credits applied if they meet certain criteria under 18 U.S.C. § 3624(g). That criteria includes having accumulated time credits in an amount that is equal to the remainder of her imposed term of imprisonment:

> **(1) Eligible prisoners**.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—
>
> **(A)** has earned time credits under the risk and needs assessment system … in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

18 U.S.C. § 3624(g)(1)(A). In other words, the First Step Act provides that a prisoner is eligible to have earned time credits applied for supervised release or prerelease custody

8

only when she has earned time credits that equal the remainder of her sentence. *See, e.g.*, *Lallave v. Martinez,* No. 22-CV-791 (NGG/RLM), 2022 WL 2338896, at *11 (E.D.N.Y. June 29, 2022) ("Furthermore, the BOP is permitted to apply time credits only once an inmate has earned time credits that equal the remainder of her sentence.") (quotations omitted). When a prisoner meets this eligibility, they may have their time credits applied toward prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(A), (C). Placement on prerelease custody includes either placement at a residential reentry center or home confinement for the amount of time credits earned, *see id.* § 3624(g)(2), and any time limits on the length of a prerelease placement are waived, *see id.* § 3624(g)(1); *see id.* § 3624(c)(1) (limiting prerelease placement in a residential reentry center to twelve months); *see id.* § 3624(c)(2) (limiting prerelease placement on home confinement to the shorter of 10 percent of the term of imprisonment or 6 months). If the inmate has a term of supervised release imposed as part of their sentence, "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months." *Id.* § 3624(g)(3); 28 C.F.R. § 523.44(d). Early transfer to supervised release effectively reduces an inmate's sentence by, at max, one year.

Here, Mills has 555 days of earned time credits. Mills also has a projected release date of November 12, 2028, via a good conduct time release.[4] This means that, as of this

---

[4] To clarify, good conduct time is different than time credits under the First Step Act. Good conduct time credit reduces a prisoner's actual time in BOP custody by awarding credit toward the service of the prisoner's sentence. 18 U.S.C. § 3624(b). Time credits, on the other hand, provide an extra incentive for inmates to participate in

Report and Recommendation, Mills has over six years remaining on her sentence. Thus, even if she had earned twice as many earned time credits as the 555 days the BOP calculates, she still would not have enough time credits that is equal to the remainder of her imposed term of imprisonment. As such, Mills is ineligible to have her time credits applied. *See, e.g.*, *Mark v. Birkholz*, No. 21-CV-1418 (KMM/DTS), Doc. No. 32 (D. Minn. Aug. 4, 2022) (recommending that the petitioner's habeas petition to apply FSA time credits be denied because the petitioner's time credits were not in an amount that was equal to the remainder of his imposed term of imprisonment); *see also Milchin v. Warden,* No. 22-CV-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022) ("Until [the petitioner] accumulates sufficient time credits to equal the remainder of his sentence, he is not eligible to have those credits applied."); *Markley v. James,* No. 21-3067-JWL, 2021 WL 1736859, at *4 (D. Kan. May 3, 2021) (denying the petitioner's habeas petition where the petitioner had not shown she was currently eligible for the application of credits under the FSA where her accumulated credits were not equal to the remainder of her prison term). In other words, Mills's request for all her time credits to be applied to her sentence now such that her release date will be moved up is premature; thus, any habeas relief is unwarranted at this time.[5] *See Workman v. Cox*, No. 4:20-CV-

---

evidence-based recidivism reduction programs or productive activities by providing time credits that can be applied toward prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(A), (C).

[5]   At this point, there is always the chance that Mills may lose time credits. *See* 18 U.S.C. § 3632(e); *see also* 28 C.F.R. §§ 523.43; 541.3. Moreover, her PATTERN Score may increase, impacting the ability to apply the time credits. *See* 18 U.S.C. § 3624(g)(1)(B), (D)(ii). As such, time credits are applied only when she has earned time

04197-LLP, 2021 WL 1080396, at *3 (D.S.D. Jan. 13, 2021) ("Finally, even if [the petitioner] were credited with all his post-FSA programming credits, he would not be eligible for immediate release, so an order granting habeas relief would not be warranted at present."), *report and recommendation adopted*, No. CIV 20-4197, 2021 WL 1060205 (D.S.D. Mar. 18, 2021). Therefore, because Mills is not eligible for the application of her time credits, Mills's First Step Act claim is presently without merit.[6]

## B. The CARES Act claim

On January 3, 2020, Congress enacted the CARES Act. *See* Pub. L. No. 116-136. Section 12003(b)(2) of the CARES Act modified the BOP's authority under 18 U.S.C. § 3624(c)(2) to place a prisoner in home confinement by allowing the BOP to lengthen the maximum amount of time that a prisoner could be held in home confinement.[7] The CARES Act states as follows:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau,

---

credits that equal the remainder of her sentence. *See Milchin*, 2022 WL 1658836, at *3. "At that time, the credit can immediately be applied and would no longer be subject to loss for future prohibited acts." *Id.*; *see also Workman v. Cox*, No. 4:20-CV-04197-LLP, 2021 WL 1080396, at *3 (D.S.D. Jan. 13, 2021) (finding that it would be futile to determine when the petitioner would be eligible for release with his time credits applied because "[a]ny date the court arrived at today could potentially change if [the petitioner] committed a disciplinary infraction after the date of this court's opinion and his FSA credits were accordingly reduced"), *report and recommendation adopted*, 2021 WL 1060205 (D.S.D. Mar. 18, 2021).

[6]     To be clear, this conclusion does not imply that Mills cannot contest the accounting of what she believes to be the proper amount of time credits she has earned – only that she is not currently eligible for the application of her time credits at this time.

[7]     18 U.S.C. § 3624(c)(2) allows the BOP to transfer a prisoner to home confinement for the shorter of (a) ten percent of the term of imprisonment of that prisoner or (b) six months.

11

>the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

Pub. L. No. 116-136, § 12003(b)(2). On March 26, 2020 and April 3, 2020, then-Attorney General William Barr issued directives for the BOP to review all inmates with COVID-19 risk factors as described by the Centers for Disease Control and Prevention ("CDC") to determine which inmates were suitable for home confinement. (Fleiner Decl. ¶¶ 4–20; Exs. B–D.) As of April 13, 2021, the BOP considered the totality of circumstances for each individual inmate and a non-exhaustive list of discretionary factors to ensure an inmate is suitable for home confinement:

> (a) Reviewing the inmate's institutional discipline history for the last twelve months (inmates who have received a 300 or 400 series incident report in the past 12 months may be referred for placement on home confinement, if in the Warden's judgement such placement does not create an undue risk to the community);
>
> (b) Ensuring the inmate has a verifiable release plan;
>
> (c) Verifying the inmate's current or a prior offense is not violent, a sex offense, or terrorism-related;
>
> (d) Confirming the inmate does not have a current detainer;
>
> (e) Ensuring the inmate is Low or Minimum security;
>
> (f) Ensuring the inmate has a Low or Minimum PATTERN[8] recidivism risk score;

---

8   PATTERN stands for Prisoner Assessment Tool Targeting Estimated Risk and Need, a tool that measures an inmate's propensity to reoffend. (*See* U.S. Dep't of Justice, "The First Step Act of 2018: Risk and Needs Assessment System.").)

    (g) Ensuring the inmate has not engaged in violent or gang-related activity while incarcerated (must be reviewed by the Special Investigative Supervisor);

    (h) Reviewing the COVID-19 vulnerability of the inmate, in accordance with CDC guidelines; and

    (i) Confirming the inmate has served 50 percent or more of the individual's sentence; or has 18 months or less remaining on their sentence and has served 25 percent or more of the sentence.

(Fleiner Decl. ¶ 16; Ex. D.) The BOP considered Mills's suitability for home confinement and determined that she has not served more than 50 percent of her sentence, and thus concluded that she did not meet the eligibility criteria for CARES Act home confinement. (*Id.* ¶ 19.)

### 1. Whether Mills is entitled to home confinement under the CARES Act

Mills challenges the BOP's decision denying her transfer to home confinement under the CARES Act. Respondent requests that the Court dismiss the petition because the Court lacks jurisdiction to review the BOP's home confinement placement decision.

Courts in this District have continually held that the BOP has exclusive authority to determine the placement of prisoners. *See, e.g.*, *Machipiness v. B. Birkholz*, No. 21-CV-1668 (JRT/ECW), 2021 WL 8363203, at *6 (D. Minn. Dec. 6, 2021), *report and recommendation adopted sub nom.*, 2022 WL 1284772 (D. Minn. Apr. 29, 2022); *Williams v. Birkholz*, No. 20-CV-2190 (ECT/LIB), 2021 WL 4155614, at *3 (D. Minn. July 20, 2021), *report and recommendation adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021); *United States v. James*, 15-CR-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020). "[I]t is the BOP—not the courts—who decides whether home

13

detention is appropriate." *Williams*, 2021 WL 4155614, at *3. "Moreover, Courts have consistently held that placement questions are not reviewable." *United States v. Vang*, No. 16-CR-277 (DWF/KMM), 2020 WL 4704875, at *2 (D. Minn. Aug. 13, 2020) (collecting cases). "It is also well established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement." *James*, 2020 WL 1922568, at *2 (collecting cases). "Home confinement is a place of confinement." *Id.* (citing 18 U.S.C. § 3624(c)). "[B]ecause release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate." *Vang*, 2020 WL 4704875, at *3 (citing 18 U.S.C. 3624(c)). Thus, Mills's challenge to the BOP's CARES Act decision is not reviewable by this Court. *See Williams*, 2021 WL 4155614, at *3.[9]

Additionally, Mills's use of a habeas corpus petition is not the proper vehicle here. A habeas petitioner under § 2241 can only challenge the fact or duration of confinement. *Spencer v. Haynes*, 774 F.3d 467, 470–71 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996). Mills challenges the BOP's decision to deny her home confinement. She does not challenge the fact or duration of her confinement. *See United*

---

[9] Although judicial review of BOP discretionary decisions such as placement decisions is generally precluded, "judicial review is not precluded for any allegations that the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority." *Williams*, 2021 WL 4155614, at *4 n.4. Mills makes such challenges by stating in her Petition that the BOP violated her Fifth, Sixth, Eighth, and Fourteenth Amendment rights by denying her home confinement under the CARES Act. (Pet. 4–5.) However, as explained below, such challenges "cannot stem from a conditions of confinement claim" as Mills seeks to do in the present case. *Id.*

*States v. Houck*, No. 20-CV-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021) (discussing home confinement as a place of imprisonment); *see also Williams*, 2021 WL 4155614, at *6 ("Home confinement is considered a place of confinement or imprisonment . . . Being transferred to home confinement is not a 'release' for incarceration."). Because Mills's CARE Act claims do not challenge "the fact or duration of h[er] custody—that is, the legality of h[er] detention, a writ of habeas corpus is not the correct remedy for the alleged violation of h[er] rights." *Jorgensen v. Birkholz*, No. 20-CV-2349 (NEB/DTS), 2021 WL 2935641, at *1 (D. Minn. July 13, 2021) (citing *Kruger*, 77 F.3d at 1073, and *Spencer*, 774 F.3d at 470). Accordingly, dismissal without prejudice of Mills's CARES act claim in her Petition is warranted for lack of subject-matter jurisdiction.[10]

---

[10] The Eighth Circuit's guidance directs courts to construe filings liberally and provide petitioners with the option to recharacterize their claims and convert their actions to a civil rights action. *See Collins v. U.S.A.*, No. 21-CV-429 (WMW/DTS), 2021 WL 5042709, at *7 (D. Minn. July 30, 2021) (citing *Spencer*, 774 F.3d at 471)*, report and recommendation adopted*, 2021 WL 5042080 (D. Minn. Oct. 29, 2021). However, the option to convert should not be given where it would "untenable." *Williams*, 2021 WL 4155614, at *7 n.8. Here, considering the variety of claims that Mills makes—some of which are not clearly developed—it would be inappropriate to convert Mills's Petition to a civil rights action. Moreover, much of Mills's Petition challenges the BOP's discretionary decision to transfer her to home confinement under the CARES Act, which, as noted above, is unreviewable (and would remain unreviewable in a civil rights action).

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner Mills's current habeas corpus petition (Doc. No. 1), be **DENIED**;

2. Petitioner Mills's pending motions to inform (Doc. Nos. 34, 35, 43) be **DENIED** as moot; and

3. This matter be **DISMISSED WITHOUT PREJUDICE**.


Date: August 17, 2022                    *s/ Becky R. Thorson*
                                         BECKY R. THORSON
                                         United States Magistrate Judge


## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within **14 days** after being served a copy" of the Report and Recommendation. A party may respond to those objections within **14 days** after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).